**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONILTON MOREIRA DA SILVA,<br><br>    Petitioner,<br><br>    v.<br><br>JAMES LAFORGE, *et al.*,<br><br>    Respondents. | No. 25cv17095 (EP)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

Petitioner, a former immigration detainee, brings this Renewed Emergency Motion to Enforce Court Order and to Ameliorate Conditions of Release, D.E. 11 ("Renewed Motion"). Respondents filed a response in opposition to Petitioner's Motion to Enforce, D.E. 14 ("Response"). The Court will determine the Renewed Motion without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons explained below, the Court will **GRANT in part** Petitioner's Renewed Motion and **REMAND** for further proceedings.

**I. BACKGROUND**

On October 31, 2025, Petitioner filed a Verified Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, D.E. 1 ("Petitioner"), in which he asserted that he was unlawfully detained by immigration authorities without a bond hearing in violation of 8 U.S.C. § 1226(a). The Court subsequently ordered Respondents to file an expedited answer to the Petition. D.E. 2 ("Order to Answer"). In lieu of answering, Respondents requested a teleconference with the Court, D.E. 3, which the Court granted, D.E. 5. After the November 13, 2025 teleconference, the Court granted the Petition and ordered Respondents to provide Petitioner with an individualized bond hearing

within 7 days.  D.E. 6 ("Memorandum Order").  On November 20, 2025, Respondents advised the Court that the Immigration Court granted Petitioner's bond request, D.E. 7 ("Status Report").[1]

On November 25, 2025, Petitioner filed this Renewed Motion, in which he seeks to compel the removal of "all non-judicially ordered conditions of release" including his placement in U.S. Immigration and Customs Enforcement's ("ICE") Intensive Supervision Appearance Program ("ISAP III"), and for the return of all personal documents retained by ICE or its agents.  Renewed Motion at 1-2.  In support of his Renewed Motion, Petitioner contends that: (1) ICE lacks authority to impose conditions beyond the Immigration Judge's Order; and (2) ICE's policies and Petitioner's constitutional right to freedom of movement require ICE to return his personal documents, including his driver's license, Employment Authorization Document/work permit, Social Security card and bank card.  *Id.* at 5-6.  Petitioner cites to a recent decision in the Eastern District of Pennsylvania, *N-N- v. McShane*, in which that court held that ICE's release conditions, which were not present in the Immigration Judge's bond order,[2] violated the petitioner's due process rights as well as the *Accardi* doctrine.[3]  *Id.* (citing No. 25-5494, 2025 WL 3143594 at *2 (E.D. Pa. Nov. 6, 2025)).

---

[1] Petitioner filed an Emergency Motion to Quash/Compel/Enforce Court Order and for Immediate Release on November 21, 2025, D.E. 9 ("First Motion to Enforce") because he was not immediately released from detention upon payment and acceptance of bond.  This Court dismissed the First Motion to Dismiss as moot after Petitioner notified the Court he had been released on bond, D.E. 12 ("Nov. 25, 2025 Text Order").

[2] In *N-N-*, the petitioner did not allege his personal documents were confiscated in violation of the *Accardi* doctrine or the Fifth Amendment.

[3] In *United States ex rel. Accardi v. Shaughnessy* ("*Accardi*"), 347 U.S. 260, 268 (1954), the Supreme Court held that remand to an administrative agency was required where the agency failed to follow its own regulations.

In opposition to Petitioner's Renewed Motion, Respondents argue that the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1226(a)(2)(A), grants ICE discretion to impose terms of supervised release. Response at 2. Furthermore, according to Respondents, the Board of Immigration Appeals ("BIA") recognized that § 1226(a)(2)(A) gives both the Attorney General and the Secretary of Homeland Security the shared authority to "place conditions on an alien's release from custody when setting a monetary bond[.]" *Id.* (quoting *Matter of Garcia-Garcia*, 25 I & N Dec. 93, 96 (BIA 2009)). Respondents note that Department of Homeland Security ("DHS") regulations promulgated under § 1226 permit a noncitizen to appeal terms of release set by ICE to the Immigration Court. *Id.* at 2, citing 8 C.F.R. § 236.1(d) and 8 C.F.R. § 1003.19(a). Respondents also contend the Court lacks jurisdiction, pursuant to 8 U.S.C. § 1226(e), over Petitioner's challenge to the necessity of the specific terms of release. *Id.* at 2, n.1. Finally, Respondents argue that ICE is permitted to confiscate documents of noncitizens who are in removal proceedings pursuant to ICE ERO[4] Policy Directive 11311, Confiscation and Return of Original Documents (Jan. 13, 2023) ("ERO Directive 11311" or "the Directive"). *Id.*[5] Under ERO Directive 11311, a noncitizen may request access to documents in ERO's possession, and ERO will determine on a case-by-case basis whether ICE has an operational need to retain the documents. *Id.* at 2-3.

## II.   DISCUSSION

### A.   Jurisdiction

Petitioner is not challenging ICE's exercise of discretion, but rather, ICE's lack of authority under its own regulations to impose additional conditions of release on him after the Immigration

---

[4] ERO refers to "Enforcement and Removal Operations" *See supra*, n. 3.

[5] ERO Directive 11311 is available at
https://www.ice.gov/doclib/foia/dro_policy_memos/11311_OrgDocConfiscationReturn.pdf.

Court released him on bond.  Renewed Motion at 5.  Petitioner also asserts that he has a due process liberty interest in the return of his personal documents. *Id.* at 7.  Therefore, 8 U.S.C. § 1226(e)—which strips courts of jurisdiction to review the Attorney General's discretionary judgment regarding application of § 1226—does not bar judicial review over Petitioner's regulatory challenge under *Accardi* or his constitutional challenge to ERO Policy Directive 11311.

Petitioner asserts jurisdiction under 28 U.S.C. § 2241(c), which provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  Most habeas cases involve challenges to criminal judgments, but § 2241 applies to non-prisoner detainees as well. *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 324 (3d Cir. 2020).  Here, the Court must determine whether Petitioner's conditions of supervised release satisfy the "in custody" requirement of § 2241.  As explained below, the Court finds that they do.

"[I]n the United States the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody." *Jones v. Cunningham*, 371 U.S. 236, 239 (1963).  "[T]he concept of 'custody' is expansive enough to encompass harms and remedies other than immediate discharge from physical confinement." *United States v. Ross*, 801 F.3d 374, 379 (3d Cir. 2015) (citing *Peyton v. Rowe*, 391 U.S. 54, 66-67 (1968)).  There is "a three-part test for deciding what constitutes custody:  the restraints on the petitioner must be (1) severe, (2) immediate (*i.e.*, not speculative), and (3) not shared by the public generally." *Id.* (citation modified).  Government authorities' ability to compel a petitioner's attendance is a significant factor weighing in favor of a determination the petitioner is "in custody." *Piasecki v. Ct. of Common Pleas, Bucks Cnty., PA*, 917 F.3d 161, 170 (3d Cir. 2019).  Likewise, compulsory physical restraints that severely restrain freedom of movement—such as restrictions to a particular

residence—weigh in favor of a conclusion that the petitioner is in custody. *Id.* at 170-71. The threat of detention upon violation of any condition is another factor that weighs in favor of a conclusion the petitioner is in custody under § 2241. *See Jones*, 371 U.S. at 242.

Petitioner's conditions of supervised release contain elements of each of the factors that weigh in favor of a determination that he is in custody for purposes of jurisdiction under § 2241. Those conditions include electronic monitoring, two scheduled 9-hour home confinement days and other unscheduled home visits, two mandatory residence verification appointments, five mandatory in-person appointments through February 24, 2026, travel restrictions within a limited geographic area and related notification requirements, and the threat of re-detention upon a violation of any of the conditions. Renewed Motion at 3; D.E. 11-1, Exhibits to Renewed Motion.[6]

These conditions are both immediate and not shared by the public generally, thus satisfying the latter two elements of the "in custody" test. The remaining question is whether these conditions impose severe restraints on Petitioner. In the Court's view, the combination of electronic monitoring, compelled attendance at appointments, home confinement days, unscheduled home visits, travel restrictions, and the threat of re-detention for any violation render the restraints imposed on Petitioner's liberty severe. *See Orellana Juarez v. Moniz*, 788 F. Supp. 3d 61, 68 (D. Mass. 2025) (holding petitioner who was in ICE intensive supervision program satisfied the "in custody" requirement for habeas jurisdiction); *accord Hogarth v. Santacruz*, No. 25-9472, 2025 WL 3211461, at *13 (C.D. Cal. Oct. 23, 2025). As Petitioner himself notes, these conditions often require him to miss full days of work. Renewed Motion at 3-4. Taking into account the

---

[6] Counsel for Petitioner advised that filing of an English translation of ISAP documents issued to Petitioner is forthcoming. Renewed Motion at 8 (referring to Exhibit C). Notably, Petitioner does not speak or read Spanish. *Id.* at 4.

confiscation of Petitioner's personal documents based on ERO Directive 11311, the restraints on Petitioner's liberty are even more severe than in these cases.[7] In sum, Petitioner's conditions of supervised release from ICE detention, even without confiscation of his personal documents, satisfy the "in custody" requirement for habeas jurisdiction under 28 U.S.C. § 2241.

## B. Legal Standard

Pursuant to 8 U.S.C. § 1226(a)(2)(A), a noncitizen may be arrested and detained pending a decision on whether the noncitizen will be removed from the United States, and the Attorney General may release such detainees on bond, with security and conditions prescribed by the Attorney General. The implementing regulations, 8 C.F.R. § 236.1(d)(1) and 1236.1(d)(1), which govern "appeals from custody decisions," each provide that "[a]fter an initial custody determination . . . "the immigration judge is authorized to exercise the authority in section 236 of the Act." Pursuant to 8 C.F.R. §§ 236.1(d)(3)(i), 1236.1(d)(3)(i) and 8 C.F.R. § 1003.19(f), either party may appeal the immigration judge's bond and custody determinations to the Board of Immigration Appeals ("BIA"). *Id.*[8] Alternatively, a detainee may request a subsequent bond redetermination upon a showing that their "circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e).

---

[7] The briefs in support of and in opposition to Petitioner's Renewed Motion do not specifically address whether ERO Directive 11311 derives from the Attorney General's authority under 8 U.S.C. § 1226 and its implementing regulations. Section 7 of the Directive states "Authorities/References. None." *Supra*, n.3. Section 9 of the Directive states, in part, "[t]his guidance does not alter any provision of any statute or regulation that contains legally binding requirements, and it is not itself a regulation." Therefore, the Court concludes Petitioner's *Accardi* doctrine argument is inapplicable to his challenge to ERO Directive 11311.

[8] The BIA has authority to stay an immigration judge's custody decision when DHS appeals. 8 C.F.R. § 1003.19(i)(I).

It is a "long-settled principle that rules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency." *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 175 (3d Cir. 2010) (citing *Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407, 422 (1942)). In *Accardi*, the Supreme Court applied this principle without requiring the petitioner to make a showing of prejudice. *Id.* (quoting *Accardi*, 347 U.S. at 268). Later, in *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532 (1970), the Supreme Court "sharply limited application of the *Accardi* doctrine when it imposed an explicit prejudice requirement." *Id.* at 176. Following *American Farm Lines*, the Third Circuit held "that violations of regulations promulgated to protect fundamental statutory or constitutional rights need not be accompanied by a showing of prejudice to warrant judicial relief." *Id.* at 178. Thus "absent prejudice, when a violation of immigration regulations implicates less than fundamental rights, wholesale remand" is not warranted. *Id.* at 179. "[F]or a regulation to protect a fundamental right, a violation must be a structural error that necessarily makes proceedings fundamentally unfair." *Aquino v. Att'y Gen.*, 53 F.4th 761, 766 (3d Cir. 2022). And where a showing of prejudice is required, the standard is "substantial prejudice to the complaining party." *Am. Farm Lines*, 397 U.S. at 539; *Leslie*, 611 F.3d at 182.

  C. **Petitioner's Supervised Release Conditions**

At the outset, the Court rejects Respondents' contention that the implementing regulations of 8 U.S.C. § 1226(a) create a shared authority between the Attorney General and the Secretary of Homeland Security to impose conditions of supervised release under the circumstances presented here. The implementing regulations for 8 U.S.C. § 1226(a) create a two-level administrative review over conditions of supervised release initially set by "any officer authorized to issue a warrant of arrest." 8 C.F.R. §§ 236.1(c)(8) and 1236.1(c)(8). The first level of review is before

an Immigration Judge.  8 C.F.R. §§ 236.1(d), 1236.1(d)(1).  The second level is an appeal to the BIA.  The authority to impose conditions of supervised release is not shared across the established appeal procedures.  Therefore, ICE violated its own regulations when, instead of appealing the Immigration Court's Order to the BIA as it should have, it imposed additional restrictions on Petitioner's supervised release.  *See N-N-*, 2025 WL 3143594, at *3 ("This interconnected regulatory scheme mirrors many other administrative appeal procedures, and the Court will not embrace ICE's isolated reading of specific sentences it finds convenient.").

In this case, it is not necessary to determine whether Petitioner is required to establish that ICE's failure to follow its own regulations substantially prejudiced him because Petitioner has made such a showing.  If Petitioner had been released under the conditions imposed by the Immigration Court—payment of bond—his liberty interest in freedom of movement would not be severely burdened by the restrictions imposed by ICE after the Immigration Court's custody/bond determination.  Because Petitioner has established prejudice, the Court will **REMAND** this matter to DHS/ICE to vacate the additional conditions of supervised release imposed by ICE.  The Court makes no determination whether the parties may now appeal the Immigration Judge's determination to the BIA.

      **D.**      **Return of Petitioner's Personal Effects**

Petitioner also seeks return of his personal documents.  He contends that "ICE's continued retention of these essential tools of Petitioner's life [his personal documents] is both a violation of its own stated policy and a continuing violation of his liberty interest protected by the Fifth Amendment, preventing him from obtaining and holding employment, accessing his money, and fulfilling the conditions of his own release." Renewed Motion at 7.  Petitioner presents no further argument in support of his constitutional challenge.

It appears that Petitioner is raising an "as applied" challenge to the constitutionality of ERO Directive 11311.  Respondents submit "[b]ecause it does not appear that Petitioner has requested ERO return the documents, ERO has not had an opportunity to make an individualized determination under this Policy Directive."  Response at 3.  Accordingly, the Court will order supplemental briefing on whether Petitioner has an avenue under the Directive for the return of his personal documents, and if not, for supplementation of the arguments in support of and opposition to the constitutional challenge.  Given the directive for additional information, the Court will reserve ruling on Petitioner's constitutional challenge to ERO Directive 11311.  Accordingly,

**IT IS** on this  7th  day of January, 2026,

**ORDERED** that Petitioner's Renewed Motion, D.E. 11, is **GRANTED in part**; and it is further

**ORDERED** that Clerk of Court shall **REMAND** this matter to DHS/ICE to vacate the additional conditions of release imposed on Petitioner by ICE after the Immigration Judge released Petitioner on bond; and it is further

**ORDERED** that the parties shall meet and confer, within **10 days** of this Order, on whether Petitioner retains the opportunity to seek return of his personal documents under ERO Directive 11311; and upon the expiration of the 10-day period, Petitioner shall file a status report.  If necessary, the Court will enter a supplemental briefing schedule on Petitioner's constitutional challenge at that time.

/s/ Hon. Evelyn Padin
Evelyn Padin, U.S.D.J.